Sid H. Carter v. Commissioner. Claudia E. Carter v. Commissioner.
Sid H. Carter v. Commissioner
Docket Nos. 38603, 38604.
United States Tax Court
1954 Tax Ct. Memo LEXIS 322; 13 T.C.M. (CCH) 43; T.C.M. (RIA) 54028; January 22, 1954
*322 Respondent recomputed the 1947 income of Sid H. Carter and his wife by using inventories. Petitioners reported their income on a cash receipts and disbursements basis. In such recomputation, respondent disallowed any credit for the inventory of cattle on January 1, 1947, which had a proven value determined by the farm-price method of not less than $71,958.42 on that date. In lieu thereof, he allowed the sum of $21,811.86 which he determined represented the unrecovered cost of cattle on hand on that date. Held, respondent erred in not including the value of the opening inventory of cattle on January 1, 1947, in recomputing income for that year. Arthur Glover, Esq., for the petitioners. J. Marvin Kelley, Esq., for the respondent. RICE
Memorandum Findings of Fact *323 and Opinion These consolidated proceedings involve deficiencies in income tax for the year 1947 determined against Sid H. Carter (hereinafter referred to as the petitioner) in the amount of $4,424.29 and against his wife, Claudia E. Carter, in the amount of $4,514.42. The issue to be decided is whether the respondent, having computed petitioner's income for 1947 by the use of inventories, erred in disallowing any credit for his opening inventory on January 1, 1947. No issue was raised with respect to other adjustments made in the deficiency notices, and they will be taken into account in the Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner and Claudia E. Carter were husband and wife during 1947, residing at Amarillo, Texas. They filed individual income tax returns for that year on the cash receipts and disbursements basis with the collector of internal revenue at Dallas. Throughout 1947 and for several years prior thereto, petitioner, individually and in joint venture with one Erwin, was actively engaged in buying and selling cattle. No formal books were maintained by petitioner *324 nor for the joint venture, and no income tax returns were ever filed for the joint venture. Petitioner prepared his own returns on the cash basis from canceled checks, deposit slips, and canceled notes and mortgages. In computing income on the cash basis, petitioner deducted, each year, the cost of all cattle purchased during that year from the total proceeds of all cattle sold. No inventories of cattle were ever made. In the fall of 1946, petitioner and Erwin purchased 1,080 head of Hereford cattle consisting of: 433
heifer yearlings, coming 2-year olds
348
cows, 4 to 8 years old
166
coming 2-and-3-year-old steers
23
bulls
110
mixed steer and heifer calves In addition, petitioner purchased for himself 50 bulls and 60 coming 2-and-3-year-old Hereford steers. On November 4, 1946, petitioner obtained a loan of $43,300, due March 1, 1947, from The American National Bank of Amarillo. In consideration therefor, he mortgaged to the bank his one-half interest in the 1,080 head of cattle owned jointly with Erwin and the 110 head which he owned exclusively. Petitioner made a $10,000 payment on the note on December 16, 1946; a $25,000 payment on January 7, 1947; *325 and paid the balance on March 5, 1947. Records of the Amarillo Livestock Auction Company show that on January 3, 6, and 8, 1947, petitioner, through it, sold 109 head of cattle which he owned exclusively. From such sales, he received net proceeds of $17,081.99. Records of the auction company show that on January 3 and 6, 1947, petitioner and Erwin sold 506 head of cattle and received net proceeds of $60,766.94. Records of the auction company show that on March 3 and 4, 1947, petitioner and Erwin sold 428 head of cattle and received net proceeds of $48,985.93. On March 5, 1947, petitioner and Erwin deposited eight amounts totaling $63,943.66 in their joint account in The American National Bank of Amarillo. Five of the items listed on the deposit slip were identical with amounts received on March 3 and 4 from sales of cattle at the auction company. Heifers sold on January 6, 1947, brought average prices of from $18.90 to $19.80 per cwt. Those sold on March 3 brought prices of $18.00 to $18.55 per cwt. Steers sold on January 8 brought average prices to $17.75 to $18.40 per cwt; those sold on March 3 brought prices of from $18.60 to $19.90 per cwt. All cattle owned by petitioner, *326 individually, and jointly by him and Erwin, and sold during January and March 1947 on the dates indicated, were purchased in the Fall of 1946. In determining the deficiencies herein, respondent disallowed petitioner's computation of income on the cash basis and computed such income by the use of inventories. The respondent refused to make any allowance for an inventory on hand on January 1, 1947, but, in lieu thereof, did allow the amount of $21,811.86 which he determined represented the unrecovered cost of cattle on hand on that date. The parties agreed to a valuation by the "farm-price method" of the inventory of cattle on December 31, 1947. The petitioner's inventory of cattle on January 1, 1947, had a value, computed by the "farm-price method", of not less than $71,958.42. Opinion RICE, Judge: The petitioner does not contest the respondent's determination that his income for the year 1947 is more accurately reflected by a recomputation using inventories than by computation on a cash basis. He does protest, and we think justifiably so, the respondent's failure to include the full value of his inventory of cattle on January 1, 1947, in making that recomputation. The respondent *327 argues that the cost of the 110 head of cattle which the petitioner purchased for himself in the Fall of 1946 was deducted in reporting income for that year. So also, respondent argues, was all but $21,811.86 of the cost of cattle purchased by petitioner and Erwin in 1946 recovered for tax purposes in that year. Hence, he says, to credit petitioner with the value of his cattle inventory on January 1, 1947, would permit him a double credit - a double deduction for the cost of his stock in trade. So long as (C.A. 2, 1936), enunciated an acceptable principle of law, the respondent had some basis for his argument. But that case was specifically overruled by the court which decided it, in affirming our memorandum opinion [ in (C.A. 2, 1953). There, the Commissioner made the same argument as made here. The court rejected it, holding that when the Commissioner redetermines a taxpayer's income, originally computed on the cash basis, by use of the accrual method, an appropriate deduction must be allowed for the value of his opening inventory in the *328 year in question. The annual accounting concept is firmly established, and the Commissioner may not make retroactive adjustments to compensate for improper or erroneously allowed deductions of the previous year. See also (promulgated October 30, 1953). Section 22 (c) of the Code and regulations issued pursuant thereto, permit the valuation of livestock by the "farm-price method". [1]
We think this record justifies our finding that the value of petitioner's inventory of cattle, determined by such method, on January 1, 1947, was not less than $71,958.42. Petitioner testified that the 110 head of cattle, which he individually purchased, and the 1,080 head, which he and Erwin together purchased in the Fall of 1946, were all on hand on January 1, 1947. The American National Bank of Amarillo held a mortgage on all such cattle on that date. Only $10,000 of the $43,300 note for which petitioner had given the mortgage had been paid. Petitioner further testified that the cattle sold by him individually in January, and with Erwin in January and in March, were the same head held on January 1, 1947. *329 Under the farm-price method, livestock is valued on the basis of its fair-market value, less disposition costs, as of the inventory date. Petitioner netted $17,081.99 from the sale of his own cattle on January 3, 6, and 8, 1947. His one-half interest in the net proceeds from the sale of the jointventure cattle, sold on January 3 and 6, was $30,383.47. We think sales within one week of the inventory date are sufficiently proximate thereto to accept the net proceeds thereof as the correct valuation figure for inventory purposes, when using the farmprice method. We are not unmindful of the possibility of substantial fluctuations in cattle prices within as short a period of time as two months. But a careful examination of the number and type of cattle sold by petitioner in early January and March does not disclose such differences in price levels between the two dates, so as to make his $24,492.96 share of the net proceeds received for cattle sold in March an unacceptable valuation figure for inventory purposes on January 1, 1947. Decision will be entered under Rule 50. Footnotes
1. Reg. 111, Sec. 29.22(c)-6(2)(b).↩